UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

| | |
|---|---|
| MICHAEL HOWER, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 0: 20-53-WOB |
| ) | |
| v. ) | |
| ) | |
| CHRIS DAMRON and J.C. STREEVAL, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendants. ) | |

*** *** *** ***

Plaintiff Michael Hower is a prisoner currently confined at the federal correctional institution in Milan, Michigan. Hower filed a pro se civil rights complaint pursuant to the doctrine announced in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). [R. 1] Following service of process, the defendants moved to dismiss the complaint. [R. 53] Hower has responded to the motion, to which the defendants have replied. [R. 62, 71] Hower has also filed two related motions. [R. 62, 72] These matters are ripe for decision.

**I**

Because this matter is before the Court upon a motion to dismiss, at this juncture the Court sets forth Hower's allegations as uncontroverted facts. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). The events relayed in Hower's complaint occurred when he was confined at the federal prison in Ashland, Kentucky. In September 2019, Officer Chris Damron told Hower that he had reviewed a telephone conversation between Hower and Hower's mother, and accused Hower of making derogatory comments about him. Damron tried to instigate a fist fight with Hower; threatened to harass other inmates until they badgered

1

or attacked Hower if Hower did not move out of the unit where he was then housed; and threatened to plant a weapon or contraband in Hower's cell in order to get him transferred to a higher security prison. Damron then told other inmates that Hower had been convicted of sex offenses, walked through his housing unit attempting to pressure inmates into attacking Hower, and offered them cigarettes, drugs, or other contraband to do so. [R. 1 at 2-3]

In January 2020, on two separate occasions officers Sexton and Bishop (neither of whom Hower named as defendants in this case) searched Hower's cell for contraband, but found nothing. Hower believes these searches were prompted by Damron in an effort to harass him. One month later, Hower sent an e-mail to his mother relaying stories told to him by other inmates of abuse by a different staff member at the prison. Then the Unit Team manager (whom Hower did not name as a defendant) called Hower into his office to discuss the contents of the e-mail. At the end of the meeting officer Sexton threatened to place Hower in protective custody if he sent any e-mails indicating that staff were being abusive. The following day Sexton told Hower that he was going to search his cell because of the allegations Hower made in his e-mail, and in fact did so shortly thereafter. [R. 1 at 4-5]

Hower states that before these events transpired, Warden J.C. Streeval was aware of complaints against Damron but took no action; failed to report Damron's misconduct to internal affairs; and had an unwritten policy that encouraged harassment of inmates like himself who, he believes, are "protected." [R. 1 at 6] Hower filed an inmate grievance regarding Damron's actions in October 2019. At each level the Bureau of Prisons noted that it was investigating his allegations of staff misconduct but that Hower would not be informed of the outcome of the investigation. The BOP denied the grievance for administrative

2

purposes. Hower's final appeal was denied by the BOP's Central Office on January 6, 2020. [R. 1-1 at 4-11]

Hower contends that the defendants' actions amounted to retaliation and restricted his right to freely communicate with his family, both in violation of the First Amendment. He further characterizes these events as cruel and unusual punishment in violation of the Eighth Amendment. Finally, he contends that Damron's urging that other officers search his cell without a legitimate reason to do so violated the Fourth Amendment. [R. 1 at 8]

## II

In their motion to dismiss, Officer Damron and Warden Streeval move to dismiss the complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction because, they contend, the implied remedy found in *Bivens* should not be extended to encompass the facts alleged in the complaint. [R. 53-1 at 5-10] The defendants also argue that Hower's complaint does not allege facts sufficient to state a claim under the Eighth Amendment and therefore seek dismissal of that claim under Rule 12(b)(6). *Id*. at 11-13. Defendants finally contend that *Bivens* does not permit official capacity claims against them, and that in any event they are entitled to qualified immunity. [R. 53-1 at 13-14]

Hower's response consists largely of a reiteration of the factual allegations of his complaint and a request that the Court reject the defendants' legal arguments. [R. 62] The caption of the response also characterizes that document as a "Motion under Rule 56(d)(2)." *Id*. at 1. But Hower does not request discovery, explain why it is needed, or identify the grounds for dismissal to which it would be responsive. Hower also does not include the affidavit or declaration required by the rule. Fed. R. Civ. P. 56(d). Hower's apparent request to defer consideration of the defendants' motion under Rule 56(d) will therefore be denied.

3

Hower has also filed a "Motion to Attach" in which he asks the Court to consider correspondence between Rand Paul, a United States Senator from Kentucky, and the BOP regarding his allegations. [R. 72]. The defendants have not filed a response opposing the motion; therefore, the Court will grant the request and consider the correspondence in response to the defendants' motion to dismiss. That said, the letters do not address either the relevant facts or the legal arguments presented by the defendants' motion.

To facilitate an orderly discussion of the issues raised, the Court will address the defendants' arguments in reverse order. The defendants' last argument is that they are entitled to qualified immunity against Hower's claims under the First, Fourth, or Eighth Amendments because he has failed to state a valid claim under any of these amendments. [R. 53-1 at 14] The Court will deny this motion without prejudice for two reasons. First, while the defendants assert that they have separately argued that Hower's allegations fail to state a claim under each of the three cited constitutional amendments, in fact they only make such an argument with respect to Hower's allegations under the Eighth Amendment. [R. 53-1 at 11-12] The defendants have therefore failed to establish any basis for their entitlement to qualified immunity with respect to Hower's claims under the First or Fourth Amendments. And as explained more fully below, Hower's complaint adequately pleads a claim under the Eighth Amendment.

Second, the Court will deny this motion for failure to adequately present factual and legal argument in support of it. The defendants set forth only a single page of general law regarding qualified immunity, with no developed discussion regarding application of that law to the particular circumstances presented here. This is not sufficient. *Cf. Johnson v. Williams*, 560 U.S. 289, 299 (2013) ("Federal courts of appeals refuse to take cognizance of arguments

4

that are made in passing without proper development."). The Court does not make any determination at this time whether the defendants may be entitled to qualified immunity if and when they present a more thorough argument in support of it.

The defendants are correct, however, that they are entitled to dismissal of Hower's official capacity claims under *Bivens*. Hower asserts that he may (or must) pursue a *Bivens* claim against the defendants in their official capacity because he seeks injunctive relief rather than monetary damages.[1] [R. 62 at 6-7] But sovereign immunity bars *Bivens* actions against the United States or its agencies, not only those seeking damages but also to claims seeking declaratory or injunctive relief. *Wolverton v. United States*, 107 F.3d 872, 1997 WL 85153, at *4 (6th Cir. Feb. 26, 1997) (*per curiam*) (unpublished table decision); *United States v. Rural Elec. Convenience Coop. Co.*, 922 F. 2d 429, 434 (7th Cir. 1991); *Larson v. Domestic & Foreign Corp.*, 337 U.S. 682, 704 (1949).

A contrary rule would impermissibly and needlessly extend *Bivens*. That decision judicially inferred a claim for *damages* against federal officials in their *individual* capacity. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). It did not authorize a claim for *injunctive relief* against federal officials in their *official* capacity, a claim that is in actuality one against the federal agency that employs the official. The Supreme Court has made plain that the extension Hower seeks would contravene both the holding and purpose of *Bivens*. *Malesko*, 534 U.S. at 61 ("... unlike the *Bivens* remedy, which we have never considered a proper vehicle for altering an entity's policy, injunctive relief has long been recognized as the

---

[1] In his response Hower asserts that he does not seek damages from the government. This is not correct: his complaint includes an express request for substantial damages from the defendants. [R. 1 at 12]

5

proper means for preventing entities from acting unconstitutionally."). Instead, the appropriate means to obtain injunctive relief to restrain federal officials from ongoing violations of federal constitutional rights is a claim directly under the Constitution. The Court possesses subject matter jurisdiction over such claim pursuant to the general federal question statute, 28 U.S.C. § 1331, and the plaintiff may seek injunctive relief against the federal agency or officer pursuant to 5 U.S.C. § 702. *Cf. Maehr v. United States Dep't of State*, 5 F. 4th 1100, 1106 (10th Cir. 2021) (*citing Simmat v. U.S. Bureau of Prisons*, 413 F. 3d 1225, 1230-35 (10th Cir. 2005)); *Roman v. Wolf*, 977 F. 3d 935, 941 (9th Cir. 2020) (*citing Ziglar v. Abbasi*, 137 S. Ct. 1843, 1862-63 (2017); *Morrison v. Fed. Bureau of Prisons*, No. 19-CV-1838 (CRC), 2021 WL 1209210, at *2 (D.D.C. Mar. 30, 2021).

Even if this were not so, Hower's requests for various forms of injunctive relief became moot upon his transfer to a different prison during the pendency of this action. *See Parks v. Reans*, 510 F. App'x 414, 415 (6th Cir. 2013) ("A prisoner's request for injunctive and declaratory relief is moot upon his transfer to a different facility.") (*citing Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)). The Court will therefore dismiss the official capacity claims against the defendants with prejudice.

The defendants next seek to dismiss Hower's individual capacity claims against them under Eighth Amendment for failure to state a claim under Rule 12(b)(6). The defendants are correct that to the extent Hower complains merely of verbal harassment, such allegations are insufficient to state a viable Eighth Amendment claim. *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *Wingo v. Tenn. Dept. of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) ("... verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief.").

But Hower also alleges that Damron directed both threats and inducements towards other inmates in an effort to get them to pressure Hower – by word or deed – to leave the prison unit, and threatened to plant evidence in Hower's cell to get him convicted of a disciplinary offense and transferred to a higher security prison. [R. 1 at 2-4; R. 62 at 5-6] Some courts previously held that threats or harassment like those allegedly made here do not amount to "punishment" within the meaning of the Eighth Amendment unless and until they come to fruition. *Cf. Saunders v. Tourville*, 97 F. App'x 648, 649 (7th Cir. 2004) (affirming dismissal of claim that officer who allegedly suggested plaintiff was a "snitch" placed inmate at risk of assault because "an inmate who suffers only a risk of physical harm has no compensable claim under the Eighth Amendment."). But the Supreme Court has made clear that prison officials violate the Eighth Amendment if they create or disregard conditions that are *likely* to cause harm in the future:

> We have great difficulty agreeing that prison authorities may not be deliberately indifferent to an inmate's current health problems but may ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year. ... That the Eighth Amendment protects against future harm to inmates is not a novel proposition. ... It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them.

*Helling v. McKinney*, 509 U.S. 25, 33 (1993). Courts have therefore held that actions by prison officials which place inmates at significant risk of future physical harm from other inmates may create liability under the Eighth Amendment. *Cf. Benefield v. McDowall*, 241 F. 3d 1267, 1271 (10th Cir. 2001) (collecting cases); *Woodhous v. Com. of Va.*, 487 F. 2d 889, 890 (4th Cir. 1973) (*per curiam*) ("A prisoner has a right, secured by the eighth and fourteenth amendments, to be reasonably protected from constant threat of violence and sexual assault by

7

his fellow inmates, and he need not wait until he is actually assaulted to obtain relief."). The allegations of Hower's complaint are therefore sufficient to state a claim under the Eighth Amendment at the pleading stage.

The defendants finally argue that even if Hower's allegations are sufficient to state a claim, the remedy afforded by *Bivens* should not be extended to apply under these circumstances. Since *Bivens* was decided in 1971, the lower federal courts have extended its rationale to provide an implied remedy against federal actors to a degree nearly co-extensive with that provided by the statutory remedy found in 42 U.S.C. § 1983 against state actors. But for its part the Supreme Court has found an implied damages action to be available in only three circumstances: (1) where federal officials search a private residence without probable cause in violation of the Fourth Amendment, *Bivens*, 403 U.S. at 397; (2) where a Congressperson terminated an employee on the basis of gender in violation of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228, 249 (1979); and (3) where prison officials displayed deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14, 24 (1980).

Since that nine-year span concluded forty years ago, the Supreme Court has "consistently refused to extend *Bivens* to any new context or new category of defendants." *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001). Indeed, it has expressly rejected requests to extend *Bivens* on eight different occasions. *Ziglar v. Abbasi*, 127 S.Ct. 1843, 1857 (2017). The Supreme Court has thus made clear that *Bivens* is a remedy available only in "limited settings," *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009), and that expanding that remedy is disfavored. *Ziglar*, 127 S.Ct. at 1857. Federal courts have viewed the decision in *Ziglar* as clearly "narrow[ing] the circumstances in which a plaintiff may successfully state a

8

claim under principles established in *Bivens*." *Atkinson v. Holder*, 925 F.3d 606, 620 (4th Cir. 2019). *See also Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 523 (6th Cir. 2020) ("What started out as a presumption in favor of implied rights of action has become a firm presumption against them.").

Under *Ziglar*, the Court must employ a two-step test to determine if *Bivens* provides a remedy for alleged misconduct by federal officials. First, a court must decide if the plaintiff's claim presents a "new context" for application of *Bivens*. A claim presents a new context requiring extension of *Bivens* "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court.]" *Ziglar*, 137 S.Ct. at 1859. A difference is "meaningful" if, for example, it involves a different constitutional rights, a different category of officers as defendants, a difference in the specificity of agency actions at issue, a difference in institutional expertise, or differing risks of judicial intrusion. *Id*. at 1860.

In this case, it is plain that Hower's claims present contexts entirely new and different from those previously recognized by the Supreme Court as cognizable under *Bivens*. His free expression and retaliation claims under the First (and, apparently, Eighth) Amendments do not involve gender-based employment discrimination or prison medical care. He does complain that the search of his cell violated the Fourth Amendment, but the search of a prison cell implicates markedly different interests and protections than those in *Bivens*, which involved the search of a private citizen's residence. *See Bell v. Wolfish*, 441 U.S. 520, 559-60 (1979) ("A detention facility is a unique place fraught with serious security dangers" and therefore an inmate's privacy interests must be balanced against the "significant and legitimate security interests of the institution."). And even a "modest extension" of a prior Supreme Court case constitutes a new context. *Ziglar*, 137 S.Ct. at 1864. Hower's Fourth Amendment claim

9

clearly presents a new context. *Cf. Morgan v. Shivers*, No. 1:14-CV-7921-GHW, 2018 WL 618451, at *5 (S.D.N.Y. Jan. 29, 2018); *Williams v. Verna*, No. No. 16-CV-764-AWI-SAB, 2018 WL 5777365, at *6 (E.D. Cal. Oct. 31, 2018). His Eighth Amendment claim regarding the alleged harassment plainly does so as well. *Bower v. Cannon*, No. No. 17-10905 (RBK) (JS), 2018 WL 6441034, at *2 (D.N.J. Dec. 7, 2018) (holding that inmate's Eighth Amendment claims for harassment presented new context under *Bivens*).

The Court must therefore proceed to the second step in the analysis to determine whether there are any special factors that counsel hesitation before extending the *Bivens* remedy to this new context. *Jacobs v. Alam*, 915 F.3d 1028, 1037 (6th Cir. 2019). In this regard,

> ... separation-of-powers principles are or should be central to the analysis. The question is "who should decide" whether to provide for a damages remedy, Congress or the courts? ... The answer most often will be Congress. When an issue "involves a host of considerations that must be weighed and appraised," it should be committed to "those who write the laws" rather than "those who interpret them."

*Ziglar*, 137 S. Ct. at 1857 (citations omitted). The Supreme Court expressly noted that "sometimes there will be doubt because the case arises in a context in which Congress has designed its regulatory authority in a guarded way, making it less likely that Congress would want the Judiciary to interfere." *Id.* at 1858.

There are numerous reasons that a judicially-implied remedy for damages is not appropriate here. First, through 42 U.S.C. § 1983 Congress long ago created a statutory cause of action against state actors for violations of constitutional rights. But it has never done so federal actors. To the contrary, more recently Congress has taken steps to curtail prisoner litigation, not expand it:

> Some 15 years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. This Court has said in *dicta* that the Act's exhaustion provisions would apply to *Bivens* suits. But the Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

*Ziglar*, 137 S. Ct. at 1865 (citations omitted).

Second, there are several alternative means for prisoners to vindicate their constitutional rights. For federal inmates, the Bureau of Prisons' inmate grievance program provides a ready and viable mechanism to challenge staff misconduct. *See Malesko*, 534 U.S. at 61 (noting that the BOP's inmate grievance program "provides yet another means through which allegedly unconstitutional actions and policies can be brought to the attention of the BOP and prevented from recurring."). This remedy is not considered less effective merely because it is created by regulation rather than by statute. *Schweiker v. Chilicky*, 487 U.S. 412, 421-22 (1988) ("The absence of statutory relief for a constitutional violation ... does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation."). And the grievance program is not considered any less effective a remedy because it does not provide the deterrence afforded by damages. In fact, the Supreme Court has expressly rejected this argument. *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) ("... we have also held that any freestanding damages remedy for a claimed constitutional violation has to represent a judgment about the best way to implement a constitutional guarantee; it is not an automatic entitlement no matter what other means there may be to vindicate a protected interest, and in most instances we have found a *Bivens* remedy unjustified."). Courts have thus consistently held that the Bureau of Prisons' inmate grievance program provides a viable

11

alternative remedy counseling against inferring a remedy under *Bivens*. *Callahan*, 965 F.3d at 524; *Freedland v. Mattingly*, No. 1:20-CV-81, 2021 WL 1017253, at *8 (M.D. Pa. Mar. 17, 2021) (collecting cases); *see also Malesko*, 534 U.S. at 69 ("So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability."). Likewise, the threat of an investigation through the BOP's Internal Affairs Office or the Department of Justice's Office of the Inspector General may also serve to deter misconduct.

In addition, the availability of injunctive relief to halt constitutional violations counsels against the creation of implied remedy for damages. *See, e.g., K.B. v. Perez*, 664 F. App'x 756, 759 (10th Cir. 2016) (recognizing that suits for injunctive relief constitute alternative means for preventing unconstitutional conduct in the prison context); *Tillman v. Huffman*, No. 1:20-CV-63, 2020 WL 9348241, at *7 (S.D.W. Va. May 28, 2020) (collecting cases), *report and recommendation adopted*, No. CV 1:20-00063, 2021 WL 1153995 (S.D.W. Va. Mar. 26, 2021); *Millbrook v. Spitz*, No. 18-CV-01962-RM-KMT, 2019 WL 5790701, at *10 (D. Colo. Aug. 26, 2019), *report and recommendation adopted*, No. 1:18-CV-01962-RM-KMT, 2019 WL 4594275 (D. Colo. Sept. 23, 2019).

The Court therefore concludes that ample factors counsel strongly against implying a remedy under *Bivens* for Hower's claims, and declines to do so here. *See Recihle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims.") (citations omitted); *Bush v. Lucas*, 462 U.S. 367, 390 (1983) (declining to extend *Bivens* to freedom of speech claim under First Amendment in context of federal employment); *Mack v. Yost*, 968 F. 3d 311, 318-25 (3d Cir. 2020) (declining to extend *Bivens* to prisoner's First Amendment retaliation claim); *K.B. v. Perez*, 664 F. App'x 756, 758-59 (10th Cir. 2016)

12

(declining to extend *Bivens* to address claimed violation of right to familial association); *Biron v. Sawyer*, No. 19-CV-2938 (SRN/LIB), 2020 WL 6121270, at *15 (D. Minn. Aug. 21, 2020) (same), *report and recommendation adopted sub nom. Biron v. Carvajal*, 2020 WL 5812970 (D. Minn. Sept. 30, 2020); *Tillman*, 2020 WL 9348241, at *8 (declining to extend *Bivens* to First Amendment retaliation claim based upon increased cell inspections); *Taylor v. Lockett*, No. 17-CV-23-Oc-02PRL, 2019 WL 764023, at *7-8 (M.D. Fla. Feb. 21, 2019) (declining to extend *Bivens* to Eighth Amendment claim for harassment).

The Court will therefore dismiss Hower's *Bivens* claims for lack of subject matter jurisdiction.

Accordingly, it is **ORDERED** as follows:

1. Hower's "Motion under Rule 56(d)(2)" [R. 62] is **DENIED**.

2. Hower's "Motion to Attach" [R. 72] is **GRANTED**.

3. Defendants' Motion to Dismiss [R. 53] is **GRANTED**.

4. Hower's claims against Officer Chris Damron and Warden J.C. Streeval in their official capacities are **DISMISSED WITH PREJUDICE**.

5. Hower's claims against Officer Chris Damron and Warden J.C. Streeval in their individual capacities are **DISMISSED** for lack of subject matter jurisdiction.

6. The Court will enter an appropriate judgment.

7. This matter is **STRICKEN** from the active docket.

This the 28th day of September, 2021.



Signed By:
*William O. Bertelsman*  WOB
United States District Judge